## NICHOLAS et al. v. CORNELIUS.

No. 5739.    Opinion Filed November 2, 1915.

(152 Pac. 831.)

**INDIANS—Allotment — Conveyance by Heirs — Validity — Approval.**
Where an allottee of one of the Five Civilized Tribes dies, and his allotment is inherited by full-blood Indian heirs prior to the passage of the act of Congress approved May 27, 1908 (35 Stat. 312, c. 199), the deed of such heirs conveying said lands, made subsequently to the taking effect of said act, when approved in compliance with the provisions thereof by the court having jurisdiction of the settlement of the estate of the deceased allottee, becomes, operative and a valid conveyance of the interests of such heirs in said land, without the approval of the Secretary of the Interior.

(Syllabus by Bleakmore, C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by Jacob E. Cornelius (substituted by order of the court for Gordon C. Hughes) against Ruby K. Nicholas and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*McDougal & Lytle,* for plaintiffs in error.

*J. R. Miller* and *T. R. Dean,* for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Creek county by Gordon C. Hughes, as plaintiff, against the defendants, to enforce the collection of a promissory note. Defendants answered, admitting the execution of the note, and alleging, in substance, that by the terms of a written contract, in consideration of $1,000 cash and $1,400 evidenced by promissory note, plaintiff agreed to furnish the necessary abstracts, certified copies, and other documents showing good and marketable title in him to certain lands, and to convey the same to defendants; that pursuant to such contract he executed a deed purporting to convey said lands to a grantee named by defendants, and promised to thereafter and within a reasonable time furnish to defendants all the documents and evidence that might be necessary to show that he had a marketable title to said lands; that, relying upon said promise, defendants paid the $1,000, executed and delivered to plaintiff the note in suit, and went into possession of the land; that plaintiff has not complied with the terms of said contract, in that he failed to furnish a sufficient abstract and has not conveyed a marketable title to said land. Demurrer was sustained to the original answer, and within the time allowed defendants filed an amended answer, containing practi-

cally the same allegations set forth in the original, which amended answer, upon motion, was stricken from the files, and judgment rendered for plaintiff.

From the pleadings it appears that the land in question, alloted to a citizen of the Creek Nation who died intestate prior to 1908, was inherited by full-blood Indian heirs, who, subsequently to the taking effect of the act of Congress of May 27, 1908, conveyed the same to plaintiff by deed approved by the county court having jurisdiction of the settlement of the estate of the allottee. It is also alleged in said answer:

"That the act of Congress known as the act of May 27, 1908, provides that full-blood heirs may convey their inherited lands by and with the approval of the county court. That the Attorney General of the United States holds that the said latter act does not give authority to full-blood Indian heirs to alienate lands inherited by them before said act went into effect, except with the approval of the Secretary of the Interior. That the Department of the Interior holds that said class of conveyances must be approved by said secretary, and that all conveyances by her, by and with the approval only of the county court, are void, and said Department of the Interior is causing to be instituted a multitude of suits to cancel, as void, such conveyances made with the approval of the county court only, and without the approval of the Secretary of the Interior, where the allottee died before the 27th day of July, 1908. * * * That, if plaintiff would cause said conveyances to be approved by the Secretary of the Interior, defendants would waive all proofs of heirship, roll cards, abstracts showing good and marketable title in plaintiff, and all other objections to said title. * * * That until said conveyances have been approved by the Secretary of the Interior the defendants' title is and will remain wholly unmarketable."

The sole question for determination seems to be whether a deed conveying the interest of full-blood Indian heirs in allotted lands, where the allottee died prior, and the deed was made subsequently to the taking effect of the act of May 27, 1908, is valid, if approved by the court having jurisdiction of the settlement of the estate of the allottee, in accordance with the provisions of that act, without the approval of the Secretary of the Interior. The defendants urge that such a conveyance is void unless approved by the Secretary of the Interior under the provisions of section 22 of an act of Congress of April 26, 1906 (34 Stat. 145, c. 1876), which provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States Court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

Section 9 of the act of Congress approved May 27, 1908 (35 Stat. 315), provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in

such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

In *Maharry v. Eatman*, 29 Okla. 46, 116 Pac. 935, construing the provisions above quoted, it was said by this court:

"The provision above quoted, and the other provisions of the act of May 27, 1908, operated to remove the restrictions against alienation of every allottee of the Five Tribes who died subsequent to the passage of said act, subject to the proviso that deeds of full-blood heirs must be approved by the county court having jurisdiction of the settlement of the estate of the deceased ancestor and those who were survived by the heirs born since March 4, 1906; but it is contended that the provisions of the act cannot be applied to any allottee who died prior to the enactment of this statute; that the phrase 'that the death of any allottee * * * shall operate,' etc., cannot apply to allottees then dead, but must apply only to those who shall thereafter die; that since the approval of the Secretary of the Interior was required to deeds of full-blood heirs by Act April 26, 1906, c. 1876, 34 Stat. 137, and was required up to the passage of the act of May 27, 1908, and that the plaintiff's deed, although executed in September, 1909, after the said statute was enacted, should have the approval of the Secretary of the Interior to make it a valid deed, because at the time of the death of the allottee whose land was attempted to be conveyed such approval was then required to the deed of his heirs, and on account of some indefinite and indeterminable claim to guardianship over the Indians by the secretary. We are frank to state that this contention does not appeal to us, and this construction of the statute seems strained and against the evident purposes and intent of Congress in its enactment, which clearly was to remove, rather than extend, restrictions on the alienations of these Indian lands, and to pass to the probate courts of the state a large

measure of the power which the Secretary of the Interior had prior thereto exercised over these Indian citizens of Oklahoma. * * .* If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the same subject, although it contains no expressed words to that effect."

In *United States v. Knight et al.*, 206 Fed. 145, 124 C. C. A. 211, involving the identical question before us, it was said:

"Darkey Stop having died before May 27, 1908, it is claimed that the deed of Caniyah Stop (the heir) was invalid, because not approved by the Secretary of the Interior as provided in section 22 above quoted, although it was executed October 12, 1908, and therefore after section 9, above quoted, was enacted. In other words, it is claimed that as to all full-blood Indian heirs whose ancestors died before May, 1908, the approval of their deeds must still be by the Secretary of the Interior. * * * Both by the law of April 26, 1906 (34 Stat. 137), and the law of May 27, 1908 (35 Stat. 312), the deed of a full-blood Indian heir was valid if approved, but not until approved, as provided in those acts. And as it cannot be claimed or pretended that the death of the allottee in any wise affected the requirement of approval, either by the Secretary of the Interior or by the county court in Oklahoma having jurisdiction over the settlement of the estate of the deceased allottee, it is clear that the decision of the question involved in this case simply requires us to determine as to what law, in regard to the approval of the deed of the Indian heir, was in force at the time Caniyah Stop executed and delivered the deed in question to Knight and Avery. There ought not to be, and we do not believe there is, any doubt about this. Prior to the passage of the law of April 26, 1906 (section 22), full-blood Indian heirs, being members of any of the Five

Civilized Tribes in Oklahoma, could not convey their allotted lands unless there had been actual removal of restrictions by the Secretary of the Interior prior to the conveyance. On and after the above last-mentioned date down to the passage of the law of May 27, 1908 (section 9), conveyances by full-blood Indian heirs were valid if subsequently approved by the Secretary of the Interior. After the passage of the law of May 27, 1908, the last expression of the will of Congress as to how such deeds should be approved is found in section 9, hereinbefore quoted, and that law was complied with in regard to the deed of Caniyah Stop. In *Tiger v. Western Investment Company,* 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, it became the duty of the Supreme Court to construe section 22, mentioned herein, for the purpose of determining whether the provision in this section requiring the approval of deeds of Indian heirs by the Secretary of the Interior was effective after the expiration of the five-year period named in section 16 of the act of June 30, 1902, (32 Stat. 503, c. 1323). For the purpose of construing said section the Supreme Court was of the opinion that it could refer to subsequent legislation, and did refer to and quote section 9 mentioned herein, and in regard thereto used the following language: 'The obvious purpose of these provisions is to continue supervision over the right of full-blood Indians to dispose of lands by will, and to require conveyances of interests of full-blood Indians in inherited lands to be approved by a competent court.' While the Supreme Court was not construing section 9, it was before the court, and we are informed as to what the court thought was its obvious purpose. We therefore conclude that, as the death of the allottee in no wise affects the requirement as to approval, the deeds of Indian heirs must be approved in accordance with the law in force at the date of the deed."

See Bledsoe, Indian Land Laws (2d Ed.) p. 124 *et sea.*

Under these controlling authorities the deed from the proper full-blood Indian heirs to plaintiff depended, not upon conformity with the act of Congress in effect at the date of the death of the allottee, but upon the approval thereof in compliance with the law in force at the date of such conveyance; hence, when said deed was approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, it became operative and a valid conveyance of the interest of said heirs without the approval of the Secretary of the Interior.

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.